Overseers of the Poor of Delaware Township, Northumberland County, *v.* Overseers of the Poor of Anthony Township, Montour County, Appellant.

*Poor laws—Settlement—Payment of taxes.*

Payment of taxes by the hand or procurement of the taxable is necessary to give him a settlement under the poor laws.

Where payment has been made in this manner the poor laws do not inquire where or how the money was obtained by the taxpayer.

Argued May 28, 1895. Appeal, No. 6, July T., 1895, by defendant, from order of Q. S. Northumberland Co., May T., 1894, No. 1, affirming order of removal of pauper. Before GREEN, WILLIAMS, McCOLLUM, DEAN and FELL, JJ. Reversed.

Appeal from order of two justices removing John Derr and his wife Lucy, paupers, from Delaware township, Northumberland county, to Anthony township, Montour county.

SAVIDGE, P. J., filed the following opinion :

" The Anthony Overseers contend that John Derr lost an admitted settlement by birth in their township (*a*) by payment of taxes for two years successively in Delaware township; (*b*) by similar payment of taxes in Turbut township, Northumberland county.

" The payments claimed for Delaware township are of 1883 and 1884 taxes. The pauper swears he paid several years' taxes there, but these are the only consecutive years claimed for. Payment for 1883 was undoubtedly made by Harvey Nye at the instance of Derr, but we find as a fact that no part of the taxes of 1884 were paid and therefore no settlement has been shown in Delaware township. This finding is upon the evidence of Charles Hartzell, the collector, to whom Derr swears he paid the taxes. Hartzell says: 'John Derr never paid me any taxes. He refused to pay me. All I ever got was the county and school tax of 1883 and they were paid by Mr. Nye.' This witness is clear, explicit, and apparently trustworthy, whilst the testimony of Derr, aside from the question of his mental incapacity, bears every mark of unreliability.

"The county tax of 1887, and the county, school and poor taxes of 1888, charged against the pauper, were paid to the collector of Turbut township, but the payment of 1887 tax was not such a payment as is contemplated by the act of 13th of June, 1836. It was not a payment by Derr, either in person or through an agent, nor was it with his money. It is clear from the testimony of Mr. Criste, who received the tax for the collector, as well as from the testimony of Derr, that one Deeter, a candidate for a public office, either without the knowledge of Derr, or pursuant to an understanding between them, paid this tax in the expectation of securing Derr's vote and for no other consideration.

"The transaction was contrary to public policy and illegal. It was not a payment by the person charged as required by the act of assembly.

"The law demands substantial contribution indicative, to some extent at least, of an ability to pay as distinguished from a state of pauperism. There must be a payment by the person charged. The payment must be the act of the person charged: Lawrence Overseers v. Delaware Overseers, 148 Pa. 380.

"One who pays taxes for votes is a mere volunteer, not an agent, and not until the elective franchise shall be legally recognized as an article of commerce to be bartered and sold, will such voluntary payment be held to be the act of the taxable within the meaning of our poor law.

"Finding, therefore, that John Derr had a settlement by birth in Anthony township, and that he did not acquire a settlement by payment of taxes either in Delaware township or in Turbut township, we dismiss the appeal at the costs of the defendant."

*Error assigned* was above order.

*James Scarlet* and *William Kase West*, for appellants, cited: Clark on Contracts, 485; Armstrong v. Bank, 133 U. S. 433.

*C. G. Voris*, for appellee, cited: Lawrence Overseers v. Delaware Overseers, 148 Pa. 380; Beaver Twp. v. Rose Twp., 98 Pa. 636.

OPINION BY MR. JUSTICE WILLIAMS, July 18, 1895:

This case turns on a single point. In 1894 John Derr and Lucy his wife became paupers, and an order was made by two justices of the peace removing them to Anthony township, which was the place of the birth of John Derr. The overseers of that township alleged that since coming of full age John Derr had acquired a settlement in Turbut township by residence and payment of taxes for two consecutive years. The residence was not disputed, and the payment of taxes for the years 1887 and 1888 was clearly shown; but it was contended that the payment of taxes for 1887 was made by one Deeter who had been a candidate for county office in 1887 and who paid the tax in May, 1888, in consideration of the fact that Derr had voted for him.

The finding of the learned judge is " that one Deeter, a candidate for public office, either without the knowledge of Derr, or pursuant to an understanding between them, paid the tax in the expectation of securing Derr's vote, and for no other consideration." From this finding of fact he concludes as matter of law that " the transaction was contrary to public policy and illegal," and did not amount to payment as between the public and Derr. For this reason he held that the settlement by birth continued to be the legal settlement of the pauper. The correctness of this legal conclusion from the finding of fact on which it rests is the point on which the case turns. The finding of fact is in the alternative. It does not determine whether the tax was paid by Deeter without Derr's knowledge, or " pursuant to an understanding between them ; " but asserts that in either event the consideration for the payment was the " expectation of securing Derr's vote." The legal conclusion covers both branches of the alternative, and holds that whether the payment was made by Deeter with or without Derr's knowledge, or with or without a previous arrangement between them in pursuance of which the payment was made, it was not a good payment. The reason given for so holding is not that the payment could not be in either event the payment of Derr, but that, whether his payment or not, the transaction was against public policy. The learned judge added " not until the elective franchise shall be legally recognized as an article of commerce to be bartered and sold, will such voluntary payment be held to

be the act of the taxable within the meaning of our poor law."
The just indignation of the learned judge at the venality of
some voters, and at the readiness of some candidates to buy
and sell the ballots of citizens, led him to overlook the real
point involved. It was a question of legal settlement he had
to pass upon. That depended on the payment of taxes by the
alleged pauper. Whether he stole the money with which to
make the payment, or obtained it as the price of committing some
other crime, was not the question ; but did Derr pay or procure
the payment of the tax? In Overseers of Lawrence Township
v. Overseers of Delaware Township, 148 Pa. 380, the question
was whether the payment of a tax by a political committee to
qualify the taxable to vote, made without his request or author-
ity, was a payment by him within the meaning of the poor laws.
We held that it was not. That case was followed by Dallas
Poor District v. Eaton Poor District, 161 Pa. 142, but it was
said in the latter case that it was not necessary that the tax
should be actually paid by the taxable in person. It was enough
if it was paid by his procurement and authority, or if paid with-
out such previous authority the payment was ratified, and re-
payment made or undertaken by the taxable. It may make
much difference in morals whether Derr obtained the money
with which to pay his taxes by honest labor, or by embezzle-
ment, or theft, or by going to the polls and selling his vote to
the highest bidder, but his settlement does not depend upon
the result of an examination into the methods by which he
secured the money. It depends on whether he paid the taxes
in person or by the hand of another who acted for him. If
therefore the fact was, as the finding of the learned judge
assumed it might have been, that Deeter paid the taxes for
1887 assessed against Derr "pursuant to an understanding
between them" that he should do so, it was a payment by
Derr, and gave him a legal settlement in Turbut township.

The decree appealed from is reversed, and order of removal
quashed.