Gaydos et al. *v.* Domabyl, Appellant.

524

Argued October 6, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Morris Berick,* with him *Davis & Young* and *James L. Hogan,* for appellant.—An action lies by all of the children of the deceased if any one of the plaintiffs had suffered pecuniary loss, but under those circumstances a jury can not assess more damages than the one plaintiff has suffered: North Penna. R. R. v. Robinson, 44 Pa.

175; P. R. R. v. Adams, 55 Pa. 499; Schnatz v. R. R., 160 Pa. 602.

One cannot indulge in conjecture, speculation and mere fancy, and so one case refused to permit recovery for an expectation of inheritance because it involved elements that were "extremely vague," "very remote" and "purely conjectural": Wiest v. Electric Traction Co., 200 Pa. 148; P. R. R. v. Adams, 55 Pa. 499.

The "persistent regularity," which is the foundation of the probable expectation, must exist: Stahler v. Ry., 199 Pa. 383; Lewis v. Hunlocks, 203 Pa. 511.

If the children are of full age, the direct pecuniary loss must be affirmatively shown: Schnatz v. R. R., 160 Pa. 602.

An incompetent adult child confined in an asylum receiving nothing from the mother, cannot recover damages for death of mother.

Adult children residing in the home and giving all their earnings to their mother, who performed services in the household, cannot recover damages for death of mother.

We concede that the services of a mother in doing the general housework for adult children may have a pecuniary value.

Where mother and minor children are supported from earnings of adult children, minor children have no right to recover damages for death of mother.

*Lawrence M. Sebring,* for appellees.—Appellees assert that if the proof shows any one of the children has suffered a pecuniary loss, the verdict must stand: North Penna. R. R. v. Robinson, 44 Pa. 175; Allison v. Powers, 179 Pa. 531.

There are many families situated as the one in the case at bar where the services to one child were of a certain extent and value, and to another child of a different extent and value; yet under the doctrines of North Pennsylvania Railroad Co. v. Robinson, supra, and Alli-

son v. Powers, supra, these differences in extent and value of services are not subjects of differentiation and decision either at the instance of the defendant wrongdoer or in contests among the different children.

Adult child residing away from home occasionally visiting the mother and giving from his earnings to his mother may recover damages for death of mother: P. R. R. v. Adams, 55 Pa. 499; Lewis v. Turnpike Co., 203 Pa. 511; Lehigh Iron Co. v. Rupp, 100 Pa. 95; Stahler v. Ry., 199 Pa. 383; Schnatz v. R. R., 160 Pa. 602.

The mother had taken care of the home and looked after the entire management of the family of which three adults were members, and the jury had a right to determine whether these services were valuable and they sustained a loss.

An incompetent adult child confined in an asylum receiving nothing from the mother cannot recover damages for death of mother.

Even if Steve suffered no damage for the death of his mother, as there were other children who did suffer, the action could be maintained, and the objections urged against Steve's recovery are questions of distribution arising on disputes among the children.

Adult children residing in the home and giving all their earnings to mother who performed services in the household may recover damages for death of mother: North Penna. R. R. v. Kirk, 90 Pa. 15.

OPINION BY MR. JUSTICE KEPHART, November 24, 1930:

Justine Gaydos, a widow, was negligently killed by defendant. She was survived by seven children, whose names and ages are as follows: Stephen, 32; Mary, 30; John, 28; Emma, 25; Joseph, 23; Irene, 17; and Ernest, 14. Stephen, the eldest, was confined in the Mayfield Asylum; Joseph resided away from home; and the five remaining lived at home with their mother. All of the children brought this action for damages and recovered a verdict; from the judgment entered thereon,

this appeal is taken. The assignments of error raise a question of the right of any one or all of the children to recover.

At common law there was no right in any one to recover damages for the death of another, but this has been changed by the Act of April 15, 1851, P. L. 669, 674, section 19, which provides that "whenever death shall be occasioned by......negligence,......the widow of any such deceased, or......personal representatives may maintain an action for......damages for the death." By the Act of April 26, 1855, P. L. 309, section 1, as amended by the Act of June 7, 1911, P. L. 678, section 1, "the persons entitled to recover damages for any injuries causing death shall be the husband, widow, children, or parents of the deceased, and no other relatives."

It was early held that "parents" and "children" were words used to show an intention of indicating a family relation in point of fact as the foundation of the right of action, without regard to age: P. R. R. v. Adams, 55 Pa. 499; Lewis v. Turnpike Co., 203 Pa. 511, 514. Family relation, as understood by the act, exists between parent and child when a child receives from a parent services or maintenance or gifts with such reasonable frequency as to lead to an expectation of future enjoyment of these services, maintenance, or gifts. The term "family relation" as thus used does not embrace its comprehensive definition, but is confined to certain phases of family relation between the persons named in the act. As the term "family relation" is understood under the act, those affected by such death need not reside at the same home or under the same roof as the deceased. They may reside elsewhere and still be within the family relation: Schnatz v. Phila. & Reading R. R., 160 Pa. 602. See Lewis v. Turnpike Co., supra. Before there can be any recovery in damages by one in that relation for the negligent death of another in the same relation, there must be a pecuniary loss: P. R. R. v. Vandever, 36 Pa.

298, 304; Caldwell v. Brown, 53 Pa. 453, 457; Lewis v. Turnpike Co., supra.

Pecuniary loss has been defined to be a destruction of a reasonable expectation of pecuniary advantage from the deceased. It is not a matter of guess or conjecture, but must be grounded on reasonably continuous past acts or conduct of the deceased: P. R. R. v. Butler, 57 Pa. 335, 338; North Penna. Railroad v. Kirk, 90 Pa. 15; Schnatz v. Phila. & Reading R. R., supra.

The reasonable expectation of pecuniary advantage to one standing in the family relation may be shown in many ways, but more frequently through services, food, clothing, education, entertainment, and gifts bestowed; to be reasonable, the services and gifts must have been rendered with a frequency that begets an anticipation of their continuance; occasional gifts and services are not sufficient on which to ground a pecuniary loss: Schnatz v. Phila. & Reading R. R., supra.

As a general rule pecuniary loss embraces the present worth of deceased's probable earnings during the probable duration of deceased's life, which would have gone for the benefit of the children, parent, husband or wife, as the case may be, and is broad enough to include the present worth of the value or probable services which would, in the ordinary course of events, be of benefit to one within this class. As stated in Sedgwick on Damages, 9th ed., volume 2, section 577, "The probable earnings of the parent *which would have enured to the benefit of the child may be recovered* and he may also be compensated for the value of the parent's services in the superintendence, attention to, and care of his family, and the education of his children of which they have been deprived by his death." And, as stated in an early case, since followed, "That loss is what the deceased would have probably earned by his intellectual or bodily labor in his business or profession during the residue of his lifetime, and which *would have gone for the benefit of his children,* taking into consideration his age,

ability and disposition to labor, and his habits of living and expenditure": P. R. R. v. Butler, supra; Mansfield Coal Co. v. McEnery, 91 Pa. 185, 189; McHugh v. Schlosser, 159 Pa. 480, 486; Burns v. P. R. R., 219 Pa. 225, 228. "The measure......is not what the deceased would have earned......but only so much thereof as the jury find would have gone for the benefit of his family": Glasco v. Green, 273 Pa. 353, 357. This rule was restated in the Act of April 4, 1868, P. L. 58, section 2, as applying to common carriers, and commented on in Cleveland & Pittsburgh Railroad Co. v. Rowan, 66 Pa. 393, 399.

Pecuniary loss is not the same measure of damages used in an ordinary negligence case where death does not ensue. In such cases, recovery may be had for medical and other expenses, physical pain and mental distress, loss of time and earning power caused by the injury: Penna. & Ohio Canal v. Graham, 63 Pa. 290, 299; Goodhart v. P. R. R., 177 Pa. 1, 14; Willis v. Traction Co., 189 Pa. 430; but damages in death cases do not include a claim for mental suffering, grief or distress of mind (McHugh v. Schlosser, supra; Regan v. Davis, supra), nor for the loss of the society or companionship, as such, of children or parents (Caldwell v. Brown, supra; Palmer v. Phila., etc., Railroad Co., 218 Pa. 114, 120). Pecuniary loss does not include loss of the earning power of the deceased as such, nor the value of the deceased's life as such nor as property, as property is generally known: P. R. R. v. Butler, supra; Mansfield v. McEnery, supra; Lehigh Iron Co. v. Rupp, 100 Pa. 95, 98, 99; McHugh v. Schlosser, supra; Schnatz v. R. R., supra; Lewis v. Turnpike Co., supra; Burns v. P. R. R., supra; Glasco v. Green, supra; Tomlinson v. N. W. Elec. Co., 301 Pa. 72, and other cases. Cf. North Penna. R. R. v. Robinson, 44 Pa. 175, 177, 178; P. R. R. v. Keller, 67 Pa. 301, 308; Hammaker v. Watts Twp., 71 Pa. Superior Ct. 554. Notwithstanding what has been stated by the earlier cases, this must be definitely under-

stood as being the law. If it were otherwise, children without regard to family relation could recover, and our rule as to the measure of damages of parents, husband and wife would not be correct, and the rule as to reasonable expectation of pecuniary advantage likewise would be incorrect. Under the Act of May 13, 1927, P. L. 992, section 1, medical, surgical, nursing, funeral and other expenses may be recovered. See Regan v. Davis, 290 Pa. 167, 171.

All the children, under the act, should sue as parties-plaintiff, even though at trial a pecuniary loss to one child only can be shown: North Penna. R. R. v. Robinson, supra; Lewis v. Turnpike Co., supra. Where all sue and less than that number have been damaged, the verdict must be confined to the loss shown by those damaged (P. R. R. v. Butler, supra; Lehigh Iron Co. v. Rupp, supra; Mansfield v. McEnery, supra; McHugh v. Schlosser, supra; Lewis v. Turnpike Co., supra; Burns v. P. R. R., supra; Schnatz v. R. R. Co., supra; Glasco v. Green, supra), even though the verdict and distribution of the amount, under the act, must be made among all the children (North Penna. R. R. v. Robinson, supra; Lewis v. Turnpike Co., supra; Glasco v. Green, supra).

An adult, if damaged, may recover as well as a minor: P. R. R. v. Adams, supra; North Penna. R. R. v. Kirk, supra; Schnatz v. R. R. Co., supra; Stahler v. Phila. & Reading Ry. Co., 199 Pa. 383. Where the loss is a minor child, the reciprocal rights in the parent and child to support and to receive the earnings raise a presumption of family relation and pecuniary loss; and the presumption prevails unless rebutted; but adults must affirmatively show direct pecuniary loss: P. R. R. v. Adams, supra; Lewis v. Turnpike Co., supra.

One of the controverted questions strongly urged is the balancing of the expectancy from the deceased with what the claimant would probably have given or laid out for the deceased during his or her life. In other

words, what items were relevant for the jury's consideration, and what factors should the court have explained in its charge to them? If we bear in mind that the basis of calculating pecuniary loss to any one in the class is to ascertain the difference between the value of the benefits claimant legally expected to receive, based on what had been received, and the value of what claimant would have been compelled to contribute or lay out during the balance of the probable life of deceased, reduced to its present worth, we would not be led into any difficulty. Thus, if parents sue for the loss of a minor child, their expectation is the present worth of his earnings or the present worth of the probable value of his services until he reaches the age of twenty-one, less what the parents would be required in the meantime to pay for his maintenance: Peters v. Bessemer & Lake Erie R. R., 225 Pa. 307; Hoon v. Beaver Valley Traction Co., 204 Pa. 369; Hook v. Bell Telephone Co., 81 Pa. Superior Ct. 120; McCleary v. Pittsburgh Rys. Co., 47 Pa. Superior Ct. 366, 374; Esher v. Mineral Railroad & Mining Co., 28 Pa. Superior Ct. 393. While twenty-one years of age is fixed as the limit after which damages may not be recovered for the death of a minor, there may be cases when the minor is close to the age of twenty-one and the mainstay or one of them of the family when killed, in which case the foregoing rule should be modified. It is so in the case of adult children who contribute. This is the rule in a great many states. Where the action is by the wife for the negligent death of her husband, her compensation is measured by so much of her husband's earnings as would have gone to her benefit, but, as the husband in life must bear his own maintenance and incidental expenses, these items form no part of what would go to the widow, and they must be deducted from his earnings when searching for pecuniary loss: Glasco v. Green, supra. In an action by a husband for the loss of his wife, his pecuniary compensation for the loss is the present value of her services as a wife; from this,

however, must be deducted the probable cost of her maintenance which he would have been compelled to pay, as well as other incidental items that he would probably have given her: Delaware, etc., R. R. Co. v. Jones, 128 Pa. 308; P. R. R. v. Goodman, 62 Pa. 329. See McArdle v. Pittsburgh Ry. Co., 41 Pa. Superior Ct. 162, 168.

In the present case, applying the foregoing general idea, the pecuniary loss to the children is the sum the surviving relatives within the act would have expected to expend for the maintenance (food and clothing) of the deceased for the probable remainder of her life deducted from the gross value of her services, etc. It may be stated that an inheritance through death, or the proceeds of an insurance policy or sums from other sources, will not relieve or mitigate the liability of a defendant for negligence: Stahler v. Phila. & Reading Ry. Co., supra; North Penna. R. R. v. Kirk, supra.

Joseph, an adult, visited home at occasional intervals, and his receipt of services, gifts or entertainment from his mother was not with such regularity that he could be said to have been pecuniarily damaged by her death: Schnatz v. P. R. R., supra. See Lewis v. Turnpike Co., supra.

Stephen was incompetent and in an asylum in Mayfield, Allegheny County. The mother may or may not have owed a duty to maintain him, depending on the circumstances at the time of the parent's death. The mere fact that he was an adult-demented child, incapable of caring for himself, does not, of itself, at common law, raise an obligation on the part of the mother to take care of him: Loyalsock Twp. Overseers v. Eldred Twp. Overseers, 154 Pa. 358. A child is emancipated at the age of twenty-one, even though he continues to live with his parents: Ibid. However, if the child was incompetent when he reached the age of twenty-one and lived with his parents, they would be obliged to provide maintenance at common law; his status would be that of a minor. But if the change in his mental condi-

tion came about after age, some authorities hold the parent would not be liable for his support. When a child is an inmate of a county home as an indigent, the poor laws provide for support from a class of relatives. The obligation for support of inmates of state institutions is controlled by the Act of June 12, 1913, P. L. 494. Keeping in mind that pecuniary loss as to adults is built on acts and conduct prior to the death of the parent, if the mother contributed nothing to his support because she was absolved therefrom under that act, no expectation of pecuniary advantage exists, hence no right to damages in Stephen or his representatives. However, if she was obliged to support him, the duty thus enjoined would raise a presumption of expectancy. If she did in fact support him, he would have an expectancy. Then, too, Stephen may have had a separate estate. The difficulty we encounter is from the failure of the record to show any of the facts necessary on which to predicate a loss. Damages are never presumed, the burden of showing facts which would bring any claimant into the class within the rule that entitles him to recover under the act rests on the one asserting the claim: Beck v. Balt. & Ohio R. R., 233 Pa. 344. See Kost v. Ashland Boro., 236 Pa. 164.

Irene and Ernest, two minor children, resided at home. The mother had a right to their earnings until they reached their majority, and she owed a duty to support them for the same period: Act of May 5, 1911, P. L. 177. The law presumes the family relation and pecuniary loss to one under age. Their damage would be the difference between the value of their mother's services, maintenance and spending money furnished to the minors, and the amount the parent would probably have received from the earnings of the children until twenty-one, and after twenty-one, in view of the relationship here established, their probable contributions to the mother during her life or as long as the family relation was not severed. It is urged that the services of

the mother was no more than a housekeeper,—citing a Texas case. This is not the correct view. Their mother's services consisted of so many indefinable acts of tender solicitude, frugality, industry, usefulness and attention to her children which only a mother knows how and when to give. These services, in addition to managing the household, buying clothing and food, washing, cooking, and general care and supervision of the house, are certainly more valuable than those of a housekeeper or servant and therefore worth more. Her age, health, expectancy and diminishing power to serve, all these items are proper for the consideration of the jury.

The adults over age who lived at home, contributed all their earnings and received clothing, food, spending money and the mother's services; the value of all these, less their contributions to the mother, would be the measure under the rule above. These adult children might reasonably expect to receive from their mother the same shelter, care, attention and service until her death as each had been given before; now that she is gone, the services cannot be secured altogether from paid help.

Appellant's contention that Ernest, the youngest child, and in fact all the children at home, have not suffered loss because their earnings have been or might have been of more value than the parent's services, demonstrates nothing but that there might be no possible net loss. This might be an argument for the jury, but it does not create a situation on which to base binding instructions. The mere fact that his brothers and sisters contributed their earnings to the mother would not alter or limit this pecuniary loss to the minor who contributed nothing. These payments may be considered in the same light as though the parent used her own money. They certainly were not made for the benefit of the injuring party; the mother made no profit and she gave the children, in spending money, much that was given to her.

It is necessary to show as nearly as possible what each child paid in to the family; the value of the mother's services as nearly as possible (this is at best a matter of conjecture), and the food, clothing, gifts and money which she gave them, in an average month or year, and the present worth of the difference, if any, would be the pecuniary loss. Payment of wages or money to a parent does not give rise to pecuniary loss unless there was a family relation through service.

Appellant is laboring under the impression that twenty-one years of age is the dividing line in the statute beyond which children cannot recover for loss of services. He forgets that the family relation is the basis of the recovery of damages, and that this may continue beyond that period; damages are measured by the pecuniary loss, based on past conduct and acts of the deceased in that relation. It is quite true that defendant may show a case where no loss has been made out, but ordinarily the question is for the jury, and not one for binding instructions.

The court, in charging the jury, stated that the act allowed the children to recover compensation for the unlawful killing, and that the children were the ones who in this case claimed they suffered an injury by reason of the death of their mother, saying: "You can only determine, under the evidence in this case, what was the pecuniary value of the life of that mother to these children, and allow them such an amount, if they are entitled to anything at all, as will compensate them for the loss of the services of the mother during the time of her probable life...... It is the pecuniary value of the life of that mother to these children which you can consider in this case and nothing else. Compensation for the loss of life was given to certain survivors by the Act of 1855. The law chose to regard it as property in a certain sense. It was to be established by the same standard as other property, to wit, its pecuniary value." It will be seen that much of this instruction violates en-

tirely the fundamental principle for the basis of ascertaining value, and, unless this court will hold that the human life has a value as property to which all the children are entitled, regardless of their situation, or to which the husband or wife may be entitled regardless of his or her situation, this instruction cannot be sustained. The damages are not based on the value of the life as property. The very first rule laid down by this court was that they are based on a reasonable expectation of pecuniary advantage based on past acts, and should be confined to those who were entitled to that pecuniary advantage from those past acts. This is the clear effect of Schnatz v. Phila. & Reading Railroad, and other cases quoted above. In the same line is Glasco v. Green, supra, an opinion by Justice WALLING cited above. We might cite others.

This was not the only error in the charge. After stating the rule " 'If there be a reasonable expectation of pecuniary advantage from a person bearing a family relation, the destruction of such expectation by negligence causing the death of the party from whom it arose, will sustain the action,' so you will determine under all of the evidence in this case whether there was a reasonable expectation of any pecuniary advantage to these children bearing a family relation to their mother, *for it seems they all lived together, and the circumstances under which they lived have been shown by the evidence in this case, so that there was a family relation between these children and their mother.*" This was clearly wrong. There was no attempt to define or explain to the jury what was meant by the term "family relation." Nor were the relative rights of each set of children explained as we have stated. Joseph and Stephen, according to the evidence in this record, suffered no pecuniary loss.

The court was asked to charge the jury on appellants' fourth point, which read: "If......plaintiffs ......have reached their majority......[and] received

only occasional gifts or services from their mother, such occasional gifts or services are not sufficient proof upon which to found a pecuniary loss," but refused. This should have been affirmed and the jury instructed, or at least given some idea, as to the law governing the rights of each set or class of children and the circumstances under which recovery might be had. Under the state of this record, there should be a new trial.

The judgment is reversed and a venire facias de novo awarded.